### HILL v. NATIONAL LIFE & ACCIDENT INS. CO. *
### No. 4965.

Court of Appeal of Louisiana.
Second Circuit.
April 1, 1935.

Fink & Fink, of Monroe, for appellant.

McHenry, Montgomery, Lamkin & Lamkin, of Monroe, for appellee.

TALIAFERRO, Judge.

In the year 1926 defendant issued to plaintiff its endowment, sick, and accident policy, wherein appears the following provision, viz.:

"If the insured shall lose both hands at or above the wrist, or both feet at or above the ankle, or one hand and one foot at or above the wrist and ankle, or if the insured shall permanently lose the sight of both eyes, as a result either of accident or illness, not caused or contributed to by venereal disease, * * * this Policy shall thereupon mature and the Company shall be liable for double the sum payable in event of death from natural causes. The payment to the insured or his beneficiary of such sum, without deduction for any weekly indemnity previously

paid, shall end and fully discharge all of the obligations and liabilities of the Company hereunder."

On the reverse side of the policy, under "Conditions," appears the following stipulation, viz.:

"2. Benefits will be paid for each day that the insured is by reason of illness necessarily confined to bed and for each day that the insured is by reason of accidental injury, of which there is external evidence, disabled from performing work of any nature, provided such confinement or disability is not less than four consecutive days and a certificate of a duly licensed and practicing physician is furnished as hereinafter provided. The total number of days for which benefits will be paid under this policy is limited to one Hundred and eighty-two (182) during any twelve consecutive months. Benefits under this clause will be paid each seven days, except when payment is for less than one week, then payment will be made at the rate of one-seventh of the weekly benefits for each day."

It is further stipulated that if insured is living at end of endowment period, or if he died prior to such time, that the sum of $88 would be due and payable to him, or his beneficiary, as the case may be. The maximum weekly allowance for sickness or disability from accident is fixed at $8.

Plaintiff alleges:

"3. That on or about the 1st day of March, 1933, your petitioner suffered the loss of his left eye through the accidental discharge of a firearm, and inasmuch as petitioner, at the time of the issuance of the above described policy, had a cataract on his right eye, all to the knowledge of the defendant, and petitioner's vision in said right eye is approximately 20-60, petitioner merely being able to distinguish between light and darkness, to distinguish colors and objects, and having been examined by Doctors A. L. Peters, J. P. Brown, and P. L. Perot, the latter two doctors having examined petitioner for defendant herein, and petitioner having been pronounced by all of the said doctors as being totally and permanently disabled from following any gainful occupation, or performing work of any nature, your petitioner avers that he is totally and permanently disabled under the terms of the said policy.

"5. Under the terms and stipulations of the said policy of insurance your petitioner is entitled to receive the sum of Eight ($8.00) Dollars per week, for a period of twenty-six weeks out of every year, and that during the year of 1933 the defendants herein paid your petitioner, under the accidental benefits, Eight ($8.00) Dollars per week for the total number of weeks allowed in one calendar year, which covered all disability allowances under the accidental feature of the policy, until February 16, 1934, and that beginning February 16, 1934, payments were again due your petitioner under the said above described accident clause of the policy, and that your petitioner is, therefore, entitled to receive the sum of Eight ($8.00) Dollars per week for a period of eight weeks that had elapsed."

He also alleges that, beginning with 16th of February, 1934, and for 5 weeks thereafter, he submitted due proof of his disability to defendant's local superintendent and representative, but he refused to entertain further claim for disability payments. He avers that inasmuch as payments under the policy have been delayed more than 30 days, defendant is liable for the total amount claimed, "plus the equal thereof as a statutory penalty, and reasonable attorney's fees," which he fixed at $100. Judgment is prayed for accordingly.

Defendant admits issuance of the policy sued on and that it was in full force and effect when plaintiff lost his left eye. It also admits payments to plaintiff of $8 per week for 14 weeks, and refusal to make additional payments of like amounts. Answering article 3 of plaintiff's petition, quoted above, defendant says:

"Respondent admits that plaintiff suffered the loss of his left eye through the accidental discharge of a firearm on or about March 21, 1933, and that plaintiff has lost the vision in his right eye to the extent that he has no practical use of said eye and can not perceive and distinguish objects, but denies the remaining allegations contained in Article Three of plaintiff's amended and supplemental petition."

Further pleading, defendant says:

"Further answering, your respondent shows that plaintiff on or about March 1, 1933 suffered an injury to his left eye causing him to be totally blind in the said eye and by reason thereof has lost the total sight of his left eye, and the vision of the right eye is lost as the sight left is of no practical use or benefit and plaintiff has permanently lost the sight of both eyes, and said contract of insurance issued to plaintiff by defendant provides in Paragraph Three (3) thereof that, 'if the insured shall permanently lose the sight of both eyes as a result either of accident or illness, not caused or contributed to by venere-

al disease, the company shall be liable for double the sum payable in the event of death from natural causes,' and, therefore, respondent is, under the terms and provisions of said policy, liable to plaintiff in the sum of One Hundred Seventy-six and no/100 ($176.00) Dollars, less the amount heretofore paid plaintiff in the sum of One Hundred Twelve and no/100 ($112.00) Dollars, and respondent shows that it is ready and willing to pay to the said plaintiff the balance of Sixty-four and no/100 ($64.00) Dollars due by it to plaintiff."

There was judgment for plaintiff for $176, and he appealed to this court. Plaintiff moved for judgment on the face of the pleadings, and complains here of adverse ruling of the lower court thereon. Under the record facts, this ruling was obviously correct. Besides the claim of compensation for total disability, plaintiff sued for counsel fees, which Act No. 310 of 1910, § 3, requires the trial court to fix. This presupposes introduction of testimony to prove proper amount of such fees. When the motion for judgment was filed, the case had not been tried, therefore a judgment at that time would have necessarily left undecided the question of counsel fees. Cases should not be disposed of by piecemeal. Aside from this, the only correct judgment that could have been rendered on the face of the pleadings was the judgment that was finally rendered after trial on the merits.

The pleadings in the case definitely fix plaintiff's condition as being "disabled from performing work of any nature." The sight of the left eye was totally destroyed by accident, and the sight of the right eye is so materially impaired that he cannot follow regularly any gainful occupation. Its impaired condition will grow worse as time passes. The medical testimony in the case supports the allegations and admissions of the pleadings on these points. This being true, we have only to decide which theory of plaintiff's rights is the correct one. He is an ignorant negro man, forty-five years old. He is not qualified to earn a livelihood save by manual labor. See Cates v. Jefferson Standard Life Ins. Co. (La. App.) 159 So. 168, and Crowe v. Equitable Life Assurance Society, 179 La. 444, 154 So. 52.

█ Plaintiff's rights under the policy involve and require an interpretation of the above-quoted provisions therein. It cannot well be questioned that when a person has lost the sight of both eyes, or the sight of one and impairment of sight of the other, to the degree plaintiff has experienced, that he is thereby incapacitated to perform manual labor, or any other labor which requires him to move about or to closely observe his surroundings and the specific work he undertakes to perform. If the policy contained no specific stipulation for measure of indemnity in event of loss of sight of both eyes, the case would be simple of solution; but since it does contain such a stipulation, it is necessary to determine which of the quoted provisions controls. Total disability may follow traumatic or other sort of injury to various parts of the body, but loss of the power of vision results only from injury to or disease of the eyes. If plaintiff's contention is correct, then what becomes of the guarantee to pay the insured a definite maximum amount for loss of eyesight? It would necessarily, by interpretation, be deleted from the policy. This we are not justified in doing if a reasonable interpretation, saving both stipulations of the policy contract, may be arrived at. It must be assumed that each provision of the policy was purposely incorporated therein, and that the insurer and insured knew their meaning, and intended their purpose. The contract is the law between the parties. No stipulation therein should be expunged or declared meaningless unless clearly repugnant to other stipulations, or totally irreconcilable with the policy as a whole.

█ Conflict between the provisions under consideration is more apparent than real. The one is general in its application; the other specific, or restricted. There is no good reason why they may not coexist in the contract, and be given the effect their language clearly imports. Total disability of the insured following accidental injuries, excepting such disability which follows injury to certain members or organs of the body, named in the face of the policy, are compensable under the general provision, but recovery for disability arising from injuries to those parts of the body embraced in the exceptions, such as loss of sight of both eyes, is limited to the amount definitely fixed in the policy, viz., twice the sum payable in case of death before end of endowment period. This construction is supported by our decision in Calhoon v. Meridian Lumber Company, 151 So. 778, 779, wherein it was held, quoting syllabus:

"That employee's capacity to work is affected by injury does not render inapplicable provisions of act allowing fixed compensation for specific losses and bring case under provisions covering general disability, since em-

ployee cannot suffer specific loss without capacity to work being impaired (Act No. 242 of 1928, p. 357, § 8, subd. 1 (a–d)."

This interpretation of the involved provisions of the Workmen's Compensation Law was affirmed by the Supreme Court under writ of review.

This construction is also well supported by the opinion of Justice Cardozo in Goldstein v. Standard Acc. Insurance Co., 140 N. E. 235, the syllabus of which is:

"Where an accident insurance policy in article 1 provided for specified payments for certain designated losses, and by article 2 provided that, if the injury did not result in any of the losses enumerated in article 1, but totally disabled insured, the company would pay him a weekly indemnity, the insured, who suffered a total permanent disability as an incidental result of one of the injuries specified in article 1, can recover only the amount specified for such loss, and not the weekly indemnity for total disability."

We are of the opinion that defendant's interpretation of the insurance policy, in the respects herein discussed, is the correct one.

Act No. 310 of 1910, § 2, provides that when the insurer delays payments to the insured for more than thirty days, "without just and reasonable grounds such as to put a reasonable and prudent business man on his guard," a penalty of double the amount due under the policy, and payment of attorney's fees, may be imposed against it. Imposition of penalties for failure to perform civil duties are not favored, and should not be imposed except in cases that are clear and free from doubt. Crowe v. Equitable Life Assur. Society of U. S., 179 La. 444, 154 So. 52.

In the present case the contentions of the parties were diametrically at variance. These necessarily involved interpretation of the contract on which both relied. Defendant's position is upheld. In such circumstances, the grounds taken by it are clearly "just and reasonable." No penalties should be assessed against it.

Excepting the amount claimed as attorney's fees, the maximum plaintiff sues for is $128. He was given judgment for $176. This amount is within the total sum sued for, including attorney's fees. We gather from defendant's counsel's brief that there is no objection to the judgment as rendered by the lower court; in fact, we are asked by them to affirm the judgment, and it is accordingly affirmed, with costs.