RUSSELL FROYSLAND v. LEEF BROS., INC.
E. I. duPONT de NEMOURS & COMPANY AND
ANOTHER, THIRD-PARTY DEFENDANTS.

197 N. W. 2d 656.

May 12, 1972—No. 43250.

*Cragg & Bailly* and *J. W. Cragg,* for appellant.

*Hvass, Weisman & King* and *Richard Williams, Jr.,* for respondent plaintiff.

*Haverstock, Gray, Plant, Mooty & Anderson* and *James S. Simonson,* for respondent duPont.

*Wurst, Bundlie, Carroll & Crouch* and *A. Thomas Wurst,* for respondent Aetna.

Heard before Knutson, C. J., and Kelly, Todd, and Mason, JJ.

MILTON D. MASON, JUSTICE.[*]

This appeal followed a jury verdict awarding damages of $45,200 in favor of plaintiff against Leef Bros., Inc. (Leef), sole defendant at commencement of the action. After service of the complaint, defendant joined E. I. duPont de Nemours & Co. (duPont) and Aetna Casualty and Surety Company (Aetna) as third-party defendants, whereupon plaintiff asserted claims against duPont. At the opening of trial, the complaint against Aetna was dismissed. The jury found plaintiff and duPont free from negligence.

This action arises out of a powder explosion on October 21, 1968, on the premises of the Federal Cartridge Company (FCC) wherein plaintiff, an employee of FCC, was severely burned. The incident occurred when the highly volatile powder that plaintiff was sifting as part of his job ignited explosively for no apparent reason, causing his clothing to catch fire. Before coworkers could remove his burning clothes and extinguish the flames, plaintiff had suffered first-, second-, and third-degree burns over the upper and lower parts of his body. Aetna, as the workmen's compensation insurance carrier for FCC, paid plaintiff's compensation benefits and medical expenses.

This lawsuit was instituted against defendant Leef on the theory that it was negligent in treating the clothing worn by plaintiff at the time of the fire and that it had breached express and implied warranties concerning the treatment of that clothing. The issue of implied warranties was later withdrawn.

All FCC employees are furnished special flame-resistant clothing which they are required to wear while working on their employer's premises. FCC contracted with defendant Leef to treat the furnished clothing with a chemical product manufactured by duPont. The purpose of this product, referred to as X-12, is to impart to cellulosic fabrics on which it is correctly applied the ability to retard burning. It is designed so that a

[*]Acting as Justice of the Supreme Court by appointment pursuant to Minn. Const. art. 6, § 2, and Minn. St. 2.724, subd. 2.

treated fabric will burn when exposed directly to an independent source of flame and continue to burn only as long as the exposure is continued, but will not support a flame by itself. The fabric, if properly treated, will self-extinguish, without an afterglow, upon removal of the source of the independent flame.

The evidence indicated that defendant Leef improperly applied the duPont product to the clothing used by FCC employees, causing an insufficient level of the product to remain in the fabric following processing and thus failing to make the fabric flame-resistant. As a result, when the powder being sifted by plaintiff exploded, his clothes ignited and continued to burn after he stepped away from the burning powder, causing burns to the lower, as well as upper, parts of his body.

The issues to be resolved on this appeal are as follows:

(1) May the workmen's compensation carrier (Aetna), as assignee of the employer (FCC), recover its entire subrogation interest in the name of the employee, or must it join the action as a party to recover?

(2) Was defendant prejudiced by permitting the workmen's compensation carrier to recover in the name of the negligence-free employee?

(3) Were the damages excessive?

(4) May an employee recover for the breach of an express warranty made by a supplier to the employer with regard to a product to be used for the employee's safety?

(5) Did plaintiff sustain the burden of proof as to apportionment of damages?

(6) Was testimony as to the meaning of the word "flame-proof" as used in the contracts between defendant and plaintiff's employer improperly restricted?

(7) Was there sufficient foundation for the admission of test results performed on garments taken at random from the employer's inventory of safety clothing?

1. Minn. St. 176.061, subd. 7, creates a separate cause of action on behalf of an employer against a negligent third party

for medical payments paid by the employer pursuant to the provisions of the workmen's compensation statute. Minn. St. 176.061, subd. 7, states in part:

"* * * This separate cause of action of the employer may be asserted in a separate action brought by the employer against such third party or in the action commenced by the employee or the employer under this chapter * * *."

The reference in subd. 7 to an action commenced by the employee or employer "under this chapter" is to that set forth in subd. 5 of § 176.061. Subd. 5, in pertinent part, states:

"* * * This action may be maintained in the name of the employee or the names of the dependents or in the name of the employer against such other party for the recovery of damages."

By reading these subdivisions together, it is clear that the statute allows the employer to bring an action in his name or in the name of the employee or his dependents if they have commenced an action. The same reasoning holds true for the employer's insurer. We held in Dockendorf v. Lakie, 240 Minn. 441, 448, 61 N. W. 2d 752, 756 (1953), that the subrogation rights of an employer include payments for medical expenses as well as periodic disability benefits paid. See, Lunderberg v. Bierman, 241 Minn. 349, 63 N. W. 2d 355 (1954).

Defendant, in support of its position, cites Braun v. Hassenstein Steel Co. 21 F. R. D. 343 (D. S. D. 1958), wherein the court held that the insurer for the employer, under Minn. St. 176.061, subd. 7, was a real party in interest and was necessary to the action under Rules 17(a) and 19, Federal Rules of Civil Procedure. The insurer there had paid, and would be liable for paying, considerable sums for medical expenses. The primary basis for the court's holding there was that without joinder of the insurer as a party the third-party tortfeasor could be subject to a duplicity of suits. We need not decide whether we are in agreement with the interpretation of the statute in Braun v. Hassenstein, *supra,* because in this case the insurer, Aetna, specifically agreed

to be bound by the results of this action prior to the commencement of trial. Thus, the possibility of a duplicity of suits against the defendant does not exist here.

Aetna paid benefits and medical expenses on behalf of the employer, FCC, for plaintiff-employee's benefit. Aetna agreed to be bound by the results of this lawsuit when it was dismissed from the case. We therefore hold that Aetna as the insurer may recover in the name of the employee and need not be a party to the action. See, Lee v. Crookston Coca-Cola Bottling Co. 290 Minn. 321, 188 N. W. 2d 426 (1971); Thibault v. Bostrom, 270 Minn. 511, 134 N. W. 2d 308 (1965).

2. Defendant claims error in not being allowed to submit evidence relating to negligence of FCC as the employer. Plaintiff's sole recourse against the employer is under our Workmen's Compensation Act. In Nyquist v. Batcher, 235 Minn. 491, 51 N. W. 2d 566 (1952), we said that the employer's contributory negligence was not available to a third-party tortfeasor as long as the beneficiary of a compensation award has any real interest in the proceeds of a judgment against the third party. We there said:

"* * * The right of the employer, as a subrogee, to indemnification for his compensation liabilities is secondary, and the assertion of his secondary right is no justification for seriously impairing the preferred status of the employe or his dependents." 235 Minn. 498, 51 N. W. 2d 571.

Minn. St. 176.061, subd. 7, enacted in 1953, did not affect the employee's right to sue for all damages incurred as a result of a third party's negligence. This case is unlike Keefer v. Al Johnson Const. Co. 292 Minn. 91, 193 N. W. 2d 305 (1971), where the contractor was awarded indemnity against the subcontractor-employer of plaintiff. The holding there was based on the subcontractor's failure to observe safety rules which breached its contractual duty to protect the contractor from liability. It would appear there was no express agreement here between the employ-

er and defendant, which is a distinguishing fact. We, therefore, adhere to the ruling in Nyquist v. Batcher, *supra,* and find no error.

3. Plaintiff here received first-, second-, and third-degree burns and incurred medical expenses of over $7,300. The jury was instructed that damages were to be allowed only for those parts of the body which were injured as a result of the continued burning of the treated garments. The jury awarded $40,000 in damages and $5,200 for medical expense. Admittedly, the time lost from employment was minimal, but we cannot say that the jury was influenced by passion or prejudice. We do not feel the damages were excessive. Farr v. Armstrong Rubber Co. 288 Minn. 83, 179 N. W. 2d 64 (1970); Mester v. Fritze, 265 Minn. 242, 121 N. W. 2d 335 (1963).

4. Defendant argues that the plaintiff cannot rely on contractual warranties made by defendant to plaintiff's employer relating to the flame-resistant qualities of garments supplied by defendant. Plaintiff acknowledges that he had no knowledge of the warranties expressed in the contracts, but seeks to rely thereon as the intended beneficiary. In recent decisions this court has allowed recovery despite lack of privity between plaintiff and defendant in certain situations but has not done so upon facts such as those presented herein. See, McCormack v. Hankscraft Co. Inc. 278 Minn. 322, 154 N. W. 2d 488 (1967); Farr v. Armstrong Rubber Co. *supra;* Beck v. Spindler, 256 Minn. 543, 99 N. W. 2d 670 (1959).

It is clear that even though plaintiff here was without knowledge of the warranties, he was the ultimate consumer of the treated garments and the intended beneficiary of the safety provisions provided by the express warranties in the agreement between his employer and defendant. To allow the employee to recover in such a situation is consistent with our prior decisions. We, therefore, hold that an employee may recover for breach of warranty by a supplier to an employer for a product used, as in this case, for the employee's safety. See, Delta Oxygen Co. v.

Scott, 238 Ark. 534, 383 S. W. 2d 885 (1964) ; Ewing v. Lockheed Aircraft Corp. 202 F. Supp. 216 (D. C. Minn. 1962) ; Hart v. Goodyear Tire & Rubber Co. 214 F. Supp. 817 (N. D. Ind. 1963) ; Peterson v. Lamb Rubber Co. 54 Cal. 2d 339, 5 Cal. Rptr. 863, 353 P. 2d 575 (1960).

5. Defendant contends that the trial court committed error in failing to dismiss the action upon the ground that plaintiff had not sustained the burden of proof as to apportionment of damages. The record shows that the trial court properly instructed the jury to find defendant liable for those damages attributable to its negligence, and we find no error.

6. Contracts wherein defendant agreed to supply FCC with garments such as those worn by plaintiff at the time of the explosion were received in evidence. In chambers, defendant made what amounted to an offer of proof of the understanding by employees of the phrase "flame-proof" contained in the contracts. Defendant alleges error in being precluded from presenting this evidence to the jury, which found that defendant made express warranties in this connection. Defendant also claims that the instructions of the court, which did not use the word "flame-proof" but rather "extinguish" and "self-extinguish" were misleading. We do not agree. Reading the instructions as a whole, we feel that the process of treating the work uniforms was adequately explained by the court. Likewise, the court was not in error in keeping from the jury the evidence as to the understanding of the contracts.

In Grimes v. Toensing, 201 Minn. 541, 545, 277 N. W. 236, 238 (1938), we stated:

"The object of construction [of contracts] is to ascertain and give effect to the intention of the parties, *as expressed in the language used*. The secret, unexpressed intention of the parties is not sought."

See, also, Kuhlmann v. Educational Publishers, Inc. 245 Minn. 171, 176, 71 N. W. 2d 889, 893 (1955) ; Langer v. Stegerwald Lbr. Co. 262 Wis. 383, 55 N. W. 2d 389 (1952).

7. Defendant claims error in the admission of evidence relating to the content of the X-12 chemical in exhibit H, a blouse or jacket taken out of stock at the FCC plant. The testimony shows that there were adequate business records and direct testimony to sustain the trial court's discretionary decision to admit testimony concerning tests performed on the garment. We find no error.

Affirmed.

MR. JUSTICE MACLAUGHLIN, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.